UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PATRICIA HARRIS                                          CIVIL ACTION

VERSUS

EXECUTIVE AFFILIATES, INC.,                   NO. 23-00607-BAJ-RLB
ET AL.

## RULING AND ORDER

Before the Court are the following Motions:

(1) Plaintiff's **Motion for Sanctions due to Spoliation of Evidence (Doc. 74)**;

(2) Defendant Executive Affiliates, Inc. d/b/a Crowne Plaza Executive Center, LLC's ("Crowne") **Motion For Summary Judgment (Doc. 73)**; and

(3) Defendant Dubois Wood Products, Inc.'s ("Dubois") **Motion For Summary Judgment (Doc. 72).**

The Motions are opposed. (Doc. 75; Doc. 76; Doc. 78). Dubois and Plaintiff filed Reply Briefs in support of their respective Motions. (Doc. 77; Doc. 84).

For the following reasons, Plaintiff's Motion (Doc. 74) is **GRANTED IN PART** and **DENIED IN PART**. Crowne's Motion (Doc. 73) is **DENIED.** Dubois' Motion (Doc. 72) is **GRANTED**.

## I.    FACTS

This is a personal injury case. Plaintiff Patricia Harris alleges that she fell through a bench in her hotel room at Crowne Plaza Executive Center in Baton Rouge, Louisiana on June 9, 2022, resulting in injury. (Doc. 72-2 ¶ 1; Doc. 76-1 ¶ 1).

Defendant Crowne was the management company for the hotel at the time of the alleged incident. (Doc. 82 at 3). Defendant Dubois manufactured the bench at issue. (*Id.*). The following facts are undisputed.

Dubois manufactured the bench in 2018 and delivered it to Crowne by January of 2019. (Doc. 72-2 ¶ 2; Doc. 76-1 ¶ 2; Doc. 82 at 3). The bench was one of 72 benches Crowne ordered from Dubois and put into use. (Doc. 72-2 ¶ 3; Doc. 76-1 ¶ 3; Doc. 82 at 3). Crowne began using the benches in early 2019 immediately after they left Dubois' control. (Doc. 72-2 ¶ 4; Doc. 76-1 ¶ 4; Doc. 82 at 4).

Crowne was responsible for the bench from 2019 until the date of the alleged incident in June of 2022. (Doc. 72-2 ¶ 5; Doc. 76-1 ¶ 5). Crowne used the bench for over three and a half years before the subject accident occurred, and there was no evidence of a claim of defective design, improper material usage, or other manufacturing issues by Crowne during that time period. (Doc. 82 at 4). Hundreds of guests stayed in the hotel room at issue where the bench was placed between the time it left Dubois' control and the date of the subject alleged incident. (*Id.*).

Plaintiff testified that she did not observe any visible defects in the bench before the alleged incident. (Doc. 73-2 ¶ 4; Doc. 75-1 ¶ 4). Plaintiff admitted that she sat on the bench the day before the alleged collapse without incident. (Doc. 73-2 ¶ 5; Doc. 75-1 ¶ 5). Plaintiff did not speak to any Crowne employees until after the bench collapsed. (Doc. 73-2 ¶ 5; Doc. 75-1 ¶ 5).

Plaintiff has not submitted an expert report, and the deadline to submit such a report has passed. (Doc. 72-2 ¶¶ 7–8; Doc. 76-1 ¶¶ 7–8). Dubois timely produced the

2

expert report of its forensic expert, Michael Panish. (Doc. 72-2 ¶ 9; Doc. 76-1 ¶ 9).

## II.    PROCEDURAL HISTORY

On June 12, 2023, Plaintiff filed suit in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana. (Doc. 1-4). Thereafter, Defendants removed the case to this Court, asserting diversity jurisdiction. (Doc. 1 at 3–4). Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Meadors v. D'Agostino*, No. CV 18-01007-BAJ-EWD, 2020 WL 1529367, at *3 (M.D. La. Mar. 30, 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Here, the Court must apply Louisiana law.

Plaintiff asserts the following claims against Crowne: (1) premises liability; and (2) general negligence. (Doc. 1-4 at 3–4). Plaintiff's claims against Dubois arise under the Louisiana Product Liability Act ("LPLA"). Plaintiff claims that the bench, manufactured by Dubois, was unreasonably dangerous in three ways: (1) design; (2) lack of adequate warning; and (3) construction or composition. (Doc. 1-4 ¶ 25).

Now, Plaintiff moves for sanctions due to spoliation of evidence. (Doc. 74). Crowne and Dubois separately move for summary judgment, asking the Court to dismiss each of Plaintiff's claims against them. (Doc. 72; Doc. 73). For the following reasons, Plaintiff's Motion (Doc. 74) will be **GRANTED IN PART** and **DENIED IN PART**, Crowne's Motion (Doc. 73) will be **DENIED**, and Dubois' Motion (Doc. 72) will be **GRANTED**.

III.   LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed,

4

and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## IV.    DISCUSSION

There are three Motions pending before the Court. First, the Court will address Plaintiff's Motion arguing that Crowne spoliated evidence. (Doc. 74). Second, the Court will address Crowne's Motion, which seeks to dismiss Plaintiff's negligence and premises liability claims against it. (Doc. 73). Finally, the Court will address Dubois' Motion, which seeks to dismiss Plaintiff's LPLA claims against it. (Doc. 72).

### A. Plaintiff's Motion for Sanctions Due to Spoliation of Evidence (Doc. 74).

Plaintiff asks the Court to find that Crowne engaged in spoliation of evidence by destroying the bench at issue after receiving a preservation notice in this case. (Doc. 74 at 2). As a result, Plaintiff asks the Court to: (1) issue an adverse inference instruction finding that the bench would have supported Plaintiff's claims and refuted Crowne's contention that the bench was safe or free from defect; (2) preclude Crowne from introducing any evidence, argument, or expert testimony suggesting that the bench was properly maintained, reasonably safe, or free from defect; and (3) grant Plaintiff the attorney's fees and costs associated with bringing the Motion. (*Id.*).

Spoliation of evidence is "the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). When evaluating spoliation claims, federal courts with diversity

5

jurisdiction must apply federal evidentiary rules. *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020). "Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct." *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 515–16 (M.D. La. 2017) (citing *Cammarata*, 688 F. Supp. 2d at 611; *Yelton v. PHI, Inc.*, 284 F.R.D. 374, 378 n. 2 (E.D. La. 2012) (affirming Magistrate Judge's Order which recognized that, because there was no allegation that the spoliating party "violated any discovery order or other directive by the Court[,]" the spoliation motions were "properly stated pursuant to this Court's inherent powers, and not Rule 37.")).[1]

A spoliation claim has three elements: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. Moreover, to receive an adverse-inference instruction based on spoliation of evidence, a party must establish that: "(1) the party with control over the evidence had an obligation to preserve it at

---

[1] Here, the parties dispute whether Rule 37(e) applies because the evidence at issue—the bench—is not electronically stored evidence. Fed. R. Civ. P. 37(e) ("Failure to Preserve Electronically Stored Information"). The Court has the authority to resolve allegations of spoliation outside of Rule 37, however, through its inherent power to regulate the litigation process. *See Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d at 515–16.

the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

First, the spoliator must have had a duty to preserve evidence. *Id.* The obligation to preserve evidence kicks in when the party charged with spoliation should have reasonably anticipated litigation. *Id.* Identifying when the duty to preserve is triggered is necessarily a fact-intensive inquiry. *Id.* "When a party should reasonably anticipate litigation, it must preserve what it knows, or reasonably should know, is relevant in the action or reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Disedare v. Brumfield*, No. 22-2680, 2023 WL 5671998, *1, *3 (E.D. La. Sept. 1, 2023).

Second, the party seeking an adverse-inference instruction must show that the spoliator intentionally destroyed evidence with a culpable state of mind. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. Negligence is not enough to satisfy this element. *Id.* The Fifth Circuit has emphasized that an adverse inference shall only be imposed upon a showing that the spoliator acted in "bad faith." *Guzman*, 804 F.3d at 713. Bad faith requires a "purpose of hiding adverse evidence," *id.*, and must be proved with actual "evidence," not "mere allegation[s]." *Hodges v. Mosaic Fertilizer L.L.C.*, 289 F. App'x 4, 7 (5th Cir. 2008). However, "a court does have substantial leeway to determine intent through consideration of circumstantial evidence" because "direct evidence of intent rarely exists." *Lou v. Lopinto*, No. 21-80,

7

2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022).

Third, the destroyed evidence must have been relevant to the charging party's claim. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. "A party suffers prejudice where it cannot present evidence essential to its underlying claim." *Id.* at 575 (internal citations and quotations omitted); *see also Schafer v. Darr*, No. CV 23-1387, 2024 WL 183587, at *2–3 (E.D. La. Jan. 17, 2024).

Here, Plaintiff argues that Crowne discarded the bench after receiving a formal preservation notice and after acknowledging receipt of same. (Doc. 75 at 10; Doc. 74 at 1). Crowne responds that "[a]t the time of disposal, there was no claim or litigation pending, and Plaintiff's counsel had yet to make a request to preserve or inspect the bench." (Doc. 78 at 4). Crowne's position, however, is belied by the deposition testimony of Eric Hoffman, Crowne's Vice President of Risk Management, which Crowne attaches to its Opposition brief. Hoffman testified:

Q. [] What renovations were performed?

A. Various renovations. I mean, it's constantly trying to keep up with, you know, staying modern.

Q. Okay. And how would that have impacted Crowne's ability to maintain the bench?

A. Somebody thought that that bench was something from the renovation that was ongoing at that time, and they thought, oh, this is broken; I'm gonna throw it away.

[. . .]

Q. Do you know who that employee is?

A. I do not.

Q. And you don't know exactly when he threw it away?

A. I don't.

Q. Okay. But that would've been after August of 2023 when -- I guess it was July of 2023 – when Crowne's lawyer told us that we'd be able to inspect the bench, right?

A. Correct.

(Doc. 91:10–92:16). Hoffman confirmed that the bench was discarded after July 2023. This lawsuit was filed in June 2023, and the preservation notice attached to Plaintiff's Motion is dated July 6, 2023. (Doc. 1-4; Doc. 74-4).

It is unclear to the Court what support Crowne has for the proposition that the "subject bench [was] not subject to any kind of litigation hold at the time of disposal," if any, and Crowne provides no citation for this proposition. (Doc. 78 at 4). Hoffman's testimony, instead, confirms that Crowne disposed of the bench after receiving the preservation notice. The first element of Plaintiff's spoliation claim is met.

Turning to the second element, Plaintiff must show that Crowne intentionally destroyed the bench with a culpable state of mind. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. At first blush, it appears that Plaintiff cannot satisfy this standard, as Hoffman's testimony indicates that Crowne disposed of the bench "inadvertently," rather than with a culpable state of mind. Hoffman testified:

Q. So you mentioned that you all preserved the bench. Where is it?

A. It was since inadvertently thrown away.

Q. Inadvertently thrown away, okay. And so you all have disposed of this bench?

A. It's gone, yes.

9

Q. And so are you aware that that bench was the subject of a spoliation letter that I sent over to your attorney?

A. Yes.

Q. And so can you explain to this jury why you disposed of that bench or why measures weren't taken to ensure that the bench was not disposed of?

[. . .]

A. The bench was placed aside in the manager's office, and, unfortunately, there was more work going on, and somebody came in and thought that was garbage and took it out without the manager's knowledge.

[. . .]

Q. [. . .] So before the bench was inadvertently disposed of, did you make your employees who had access to that bench aware of the fact that it was subject to a spoliation letter?

A. Yes.

Q. How did you go about letting them know that?

A. I told the manager we had to preserve the bench.

Q. Did you put it in writing?

[. . .]

A. I most likely emailed them.

(Doc. 78-1 at 46:2–47:12).

The Fifth Circuit has held, however, that "bad faith is a question of fact like any other." *Van Winkle v. Rogers*, 82 F.4th 370, 378 (5th Cir. 2023). The Circuit has further "cited with approval a district court's decision to give 'both parties the freedom to put forward evidence about document destruction' and to defer a decision on

whether a spoliation instruction is warranted until the close of trial." *Id. at* 378–79 (citing *BCE Emergis Corp. v. Cmty. Health Sols. of Am., Inc.*, 148 F. App'x 204, 219 (5th Cir. 2005)).

The Court finds this case similar to *Van Winkle v. Rogers*, 82 F.4th 370, 377 (5th Cir. 2023), in which the Circuit found "sufficient circumstantial evidence to create a genuine dispute of material fact as to whether [d]efendants destroyed the [evidence at issue, a] tire[,] in bad faith." *Id.* There, plaintiff claimed that the tread from a tire on defendants' tractor-trailer separated from the tire core and hit plaintiff's vehicle on the interstate. *Id.* at 373. Though the remnants of the damaged tire were initially saved, the *Van Winkle* defendants later destroyed the tire as a result of what they claimed was simple negligence. *Id.* Although it was undisputed that the *Van Winkle* defendants intentionally destroyed the tire, the district court denied plaintiff's motion for sanctions, finding that defendants' actions were negligent rather than a result of bad faith. *Id.* at 375. The Circuit found that the district court abused its discretion and remanded, holding that bad faith is a fact question that should be sent to the jury upon a finding of a genuine factual dispute. *Id.* at 379.

The Circuit's holding was based on the following facts: (1) the need for the tire material to be preserved was critical; (2) the *Van Winkle* defendants destroyed the tire six weeks after the accident, though defendants had been immediately notified that the tire would be at the center of any litigation stemming from the accident; (3) the *Van Winkle* defendants could not produce evidence regarding what happened

11

to the tire; and (4) the *Van Winkle* defendants could not demonstrate that it had a formal preservation or retention policy. *Id.* at 378–79. The Circuit emphasized that a moving party has "a stronger argument for spoliation [if she could] prove that the [evidence was] destroyed after [the spoliator] had notice of their relevance to her claim." *Id.* at 376 (citing *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007)).

Here, it is undisputed that the bench is critical evidence in this case. Hoffman confirmed:

> Q. And as far as the preservation of the bench in this lawsuit [] Crowne knew that the bench that allegedly collapsed, causing plaintiff's injury -- Crowne knew that that was a critical piece of evidence in this case, right?
>
> A. Yes.
>
> Q. And Crowne made -- sent instructions to all its employees to make sure it didn't get thrown away?
>
> A. Yes.

(Doc. 78-1 at 93:24–94:8). As described previously, Crowne had notice of the instant litigation before it destroyed the bench. Crowne did not provide an applicable retention policy, or a purported email to employees informing them to preserve the bench. The only explanation in the record, other than Crowne's general denial, is Hoffman's testimony that an unnamed employee inadvertently disposed of the bench at an unknown time. The Court finds the instant facts similar to *Van Winkle*, such that a fact issue exists regarding whether Crowne destroyed the bench in bad faith.

Finally, the third element—that the destroyed evidence must have been

relevant to the charging party's claim—is easily met, as described above.

For these reasons, Plaintiff's Motion is **GRANTED IN PART.** The Court will allow Plaintiff to introduce evidence of spoliation at trial. Crowne will be permitted to rebut it. If the evidence at trial conclusively establishes spoliation, the Court will consider instructing the jury that Crowne did spoliate evidence and to draw an adverse inference as a consequence. If a genuine issue of material fact as to spoliation remains at the conclusion of trial, the jury will decide the issue of spoliation. *See Manzanares v. El Monte Rents, Inc.*, No. 4:24-CV-191, 2026 WL 59763, at *9 (E.D. Tex. Jan. 7, 2026) (implementing this approach).

Because Plaintiff provided no legal support for its request for attorney's fees and costs associated with this Motion, the Court will deny Plaintiff's request for same. Plaintiff's Motion is **DENIED IN PART** in this respect.

## B. Crowne's Motion for Summary Judgment.

Next, the Court will turn to Crowne's Motion for Summary Judgment, which urges the Court to dismiss Plaintiff's premises liability and negligence claims against it. (Doc. 73). Crowne argues that Plaintiff cannot: (1) demonstrate actual or constructive knowledge of the allegedly hazardous condition at issue; or (2) present any evidence that Crowne Plaza failed to satisfy its duty to exercise reasonable care. (*Id.* at 1).

Civil Code Article 2317.1 governs Crowne's liability for damages caused by a defect in its premises. *See Bufkin v. Felipe's La., LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851. Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code Ann. art. 2317.1.

To recover under Article 2317.1, Plaintiff must show that (1) Crowne owned or had custody of the facility; (2) the facility contained a defect that presented an unreasonable risk of harm; (3) the defective condition caused damage; and (4) Crowne knew or should have known of the defect. *See Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018); *see also Niel v. Purina Mills, LLC*, No. CV 17-972-BAJ-RLB, 2019 WL 2438783, at *2 (M.D. La. June 11, 2019). One is presumed to have constructive notice of a defect or dangerous condition when it is shown to have existed for such a long period of time that knowledge thereof can be presumed, or that it can be said that one should have had knowledge of the condition. *Jones v. Hancock Holding Co.*, 707 F. Supp. 2d 670, 674–75 (M.D. La. 2010) (citing *Charan v. Bowman,* 965 So. 2d 466 (La. App. 1 Cir. 2007), *writ denied*, 967 So.2d 505 (La. 2007)).

The source of negligence liability in Louisiana is Civil Code Article 2315, which instructs that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Louisiana courts use a duty-risk approach to decide whether to impose negligence liability. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 7 (La. 3/10/06); 923 So. 2d 627, 632. To

14

recover under that approach, the plaintiff must prove five elements: (1) the defendants had a duty to conform their conduct to a specific standard; (2) the defendants' conduct failed to conform to the appropriate standard; (3) the defendants' substandard conduct was cause in fact of the plaintiff's injuries; (4) the defendants' substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann*, 923 So. 2d at 633).

Courts have recognized that "'there is [now] essentially no difference' between Civil Code article 2315 and 2317.1 claims." *Cormier v. Marriott Int'l*, No. CV 18-11701, 2019 WL 5785001, at *2–3 (E.D. La. Nov. 6, 2019) (citing *Bd. Of Comm'rs of Se. La. Flood Pr. Auth.-E v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 729 (5th Cir. 2017)); *see also Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 473 ("Whether a claim arises in negligence under La.Civ.Code art. 2315 or in premises liability under La.Civ.Code art. 2317.1, the traditional duty/risk analysis is the same. And now, with La.Civ.Code art. 2317.1's requirement of actual or constructive knowledge of a defect, the result under either should be the same."). Because both parties rely on Louisiana Civil Code article 2317.1 in their briefing, the Court will follow this article to guide its analysis applicable to both claims.

Crowne argues that Plaintiff's claim must fail because Crowne did not have actual or constructive knowledge of the allegedly hazardous condition at issue. In support of its argument, Crowne provides the Affidavit of Eric Hoffman, Crowne's Vice President of Risk Management. (Doc. 73-6). In his Affidavit, Hoffman attests

that: (1) all units are cleaned and inspected for observable defects before and after each patron's stay; (2) during each room cleaning, staff make a visual observation to ensure all furniture and appliances appear to be in normal stable condition; (3) Plaintiff's room was cleaned and inspected prior to her stay and all furniture appeared to be in normal, usable condition; and (4) Crowne was not aware of the allegedly defective bench. (*Id.*). Crowne also relies on Hoffman's deposition testimony, in which he indicates that "[a] room is cleaned and inspected after every guest leaves." (Doc. 73-7 at 27:7–8). Hoffman further testified that the inspection process requires staff to "[v]isually inspect the room for cleanliness, repairs, and maintenance needed." (Doc. 73-7 a 33:17–18).

Plaintiff responds that Hoffman's testimony is unreliable because he contradicts himself. (Doc. 75 at 6). The only statements Plaintiff points to in support of her position is Hoffman's testimony regarding "guest-stay inspections." Hoffman testified that Crowne's policy requires an inspection of each hotel room after every checkout, but Hoffman could not estimate the number of guests that stayed in the hotel room at issue since 2019 and could not identify the person who would have this knowledge. (Doc. 75 at 6; Doc. 73-7 at 27:7–28:16). The Court does not find these statements to be contradictory and does not need to weigh credibility to make such a determination.

Plaintiff, in turn, presents the following evidence to support her claim against Crowne: (1) photos of what appears to be Plaintiff after falling due to the alleged bench collapse (Doc. 75-2); and (2) Crowne's written discovery responses. Plaintiff

16

challenges the fact that Crowne produced a policy addressing inspections of hotel rooms but did not produce a "room folder" for the specific hotel room at issue showing that the bench was, indeed, inspected. (Doc. 75 at 10–11).

At trial, Plaintiff bears the burden to show that Crowne knew or should have known of the alleged defect in the bench. Here, Plaintiff simply has not put forth any evidence regarding Crowne's actual or constructive knowledge of the alleged defect. Plaintiff argues, however, that Crowne's destruction of the bench "not only deprives Plaintiff of the best proof of defect, but also shields Crowne [] from having to answer whether the bench showed visible signs of damage or wear that would have been detectable during a proper inspection." (Doc. 75 at 10). The Court finds Plaintiff's argument persuasive. Under the circumstances of this case, the Court finds it inappropriate to grant Crowne's Motion solely based on Plaintiff's lack of evidence, when the Court has already found that Crowne spoliated the most crucial evidence available to Plaintiff—the bench.[2]

As previously described, the Court will permit both parties to offer evidence regarding spoliation of the bench at trial. Should the Court find a spoliation instruction appropriate, Plaintiff will be permitted a jury instruction that if jurors find bad faith, they may infer that the destroyed evidence would have been adverse to Crowne's defense in this case.[3] *See Van Winkle v. Rogers*, 82 F.4th 370, 379

---

[2] The only remaining issue is whether Crowne spoliated the evidence in bad faith.

[3] Plaintiff also argues that the Court should apply *res ipsa loquitur* to preclude summary judgment. (Doc. 75 at 13–16). Crowne provides no response. Should Plaintiff seek a jury instruction regarding *res ipsa loquitur* at trial, the Court will address it at that time.

(5th Cir. 2023).

### C. Dubois' Motion for Summary Judgment.

Finally, the Court will turn to Dubois' Motion for Summary Judgment, asking the Court to dismiss Plaintiff's LPLA claims against it. (Doc. 72). Dubois argues that Plaintiff cannot satisfy her burden under the LPLA because she has not offered expert testimony, and thus, her claims against Dubois must be dismissed. (Doc. 72 at 1). Dubois contends that both Louisiana courts and federal courts interpreting Louisiana law have held that it is not possible for a jury to determine a product to be defective under the LPLA without expert testimony. (*Id.* at 2). Because Plaintiff has no expert in this case, and all relevant deadlines have passed, Dubois contends that Plaintiff cannot satisfy her burden under the LPLA. (*Id.*). Assuming *arguendo* that expert testimony is not needed, Defendant argues that Plaintiff cannot establish that any alleged defect in the bench existed at the time it left Dubois' control in January 2019. (*Id.* at 7).

Plaintiff responds that expert testimony is not necessary. (Doc. 76 at 2). Plaintiff argues that instead, the doctrine of *res ipsa loquitur* applies and supports an inference that the product was defective or unreasonably dangerous when it left Dubois' control. (*Id.* at 3; 5–8). Plaintiff further contends that the testimony of Dubois' own president, admitting that weight capacity was only tested after the incident and that no warnings were provided, creates a triable issue of fact. (*Id.* at 3).

To maintain a products liability action under the LPLA, a plaintiff must show that her damages were proximately caused by an unreasonably dangerous

characteristic of the product and that her damages arose from a reasonably anticipated use of the product. La. Rev. Stat. Ann. § 9:2800.54(A). The plaintiff bears the burden of proving that a product is unreasonably dangerous, and must establish one of the following: defective construction or manufacturing, defective design, inadequate warning, or breach of express warranty. *Id.; see Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 260–61 (5th Cir. 2002). Defects are not presumed by the mere fact that an accident or injury occurred. *Krummel v. Bombardier Corp.,* 206 F.3d 548, 551 (5th Cir. 2000); *see also Arant v. Wal-Mart Stores, Inc.,* 628 F. App'x 237, 239 (5th Cir. 2015).

In Plaintiff's Petition, she alleges that the bench was unreasonably dangerous in three ways: (1) design; (2) lack of adequate warning; and (3) construction or composition. (Doc. 1-4 ¶ 25). The Parties do not distinguish between these three theories of recovery in their briefing. Because Plaintiff's LPLA claims must be analyzed under the relevant statutory framework, however, the Court does so, beginning with Plaintiff's defective design claim.

### i.    Defective Design.

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the

likelihood of damage when the manufacturer has used reasonable care
to provide the adequate warning to users and handlers of the product.

La. Stat. Ann. § 9:2800.56.

"No language or provision of the statute requires that a cause of action alleging a design defect must, as a matter of law, be supported by expert testimony." *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 137 (5th Cir. 2004) (citing La. Rev. Stat. Ann. § 9:2800.54). To the extent the statute allocates burdens of proof or production, it simply states that "[t]he claimant has the burden of proving the elements of [her claim]." *Id.*

To withstand Dubois' Motion, Plaintiff is required to present evidence sufficient to enable a reasonable trier of fact to conclude that she has established the essential elements of her claim, "including that safer alternative designs were in existence at the time the [bench] left [Dubois'] control and that the risk avoided by such designs outweighed the burden of adopting the designs." *Lacassin v. Virco, Inc.*, No. 6:11-CV-2104, 2012 WL 6183682, at *5 (W.D. La. Dec. 11, 2012) (citing *Morgan v. Gaylord Container Corp.*, 30 F.3d 586 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 181 & 183 (5th Cir. 1990)). No evidence has been presented regarding the existence of a safer alternative design for the bench. Thus, Plaintiff's design defect claim against Dubois will be **DISMISSED WITH PREJUDICE**.

      **ii.**    **Failure to Warn.**

To recover under the theory of failure to warn, Plaintiff bears the burden of establishing that: (1) "the product possessed a characteristic that may cause damage

20

and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product;" and (2) that the failure to do so proximately caused the claimant's injuries. La. Rev. Stat. § 9:2800.54 and 9:2800.57; *Krummel,* 206 F.3d at 557; *see also Broussard v. Procter & Gamble Co.,* 463 F. Supp. 2d 596, 609 (W.D. La. 2006), *aff'd,* 517 F.3d 767 (5th Cir. 2008).

The Parties fail to brief the issue of Dubois' alleged failure to warn. Plaintiff, however, challenges the fact that the bench was not accompanied by a warning indicating that the bench had an alleged 350-pound limit. (Doc. 76 at 5; Doc. 72-4 at 30). Critically, Plaintiff must show that Dubois' alleged failure to warn proximately caused her injuries. Here, there has been no evidence that Dubois' alleged failure to warn caused Plaintiff's injuries. The record does not indicate Plaintiff's weight at the time of the alleged incident, such that a warning label indicating a maximum weight of 350 pounds would have even applied to Plaintiff. The record also does not include any indication as to whether Plaintiff looked for a warning or weight limit before sitting on the bench or would have heeded such a warning. Because Plaintiff has not shown that Dubois' alleged lack of adequate warning was the proximate cause of her alleged injuries, Plaintiff's failure to warn claim against Dubois will be **DISMISSED WITH PREJUDICE**.

### iii.    Defective Construction or Composition.

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material

way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55 (emphasis added).

Defendant argues that Plaintiff cannot establish that a defect in the bench existed at the time it left Dubois' control. (Doc. 77 at 3). Plaintiff responds that the doctrine of *res ipsa loquitur* applies and supports an inference that the bench was defective or unreasonably dangerous when it left Dubois' control. (Doc. 76 at 3; 5–8).

The doctrine of *res ipsa loquitur* allows for an inference of negligence or liability when the circumstances of an accident are so unusual as to preclude other probable explanations. *See Lawson v. Mitsubishi Motor Sales of Am., Inc.,* 938 So.2d 35, 43–44 (La. 2006). But for *res ipsa loquitur* to apply, a plaintiff must "sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides [the] defendant in causing the accident." *Id.* at 50; *Gladney v. Milam*, 39,982 (La. App. 2 Cir. 9/21/05), 911 So. 2d 366, 371 (explaining that "if there is an equally plausible explanation for the occurrence, the doctrine is not applicable"); *see also Arant v. Wal-Mart Stores, Inc.*, 628 F. App'x 237, 240 (5th Cir. 2015).

For *res ipsa loquitur* to apply, a plaintiff must establish three elements: (1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; (2) the plaintiff must establish that the defendant's negligence falls within the scope of his duty to the plaintiff, and; (3) the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident. *Lawson*, 938 So.2d at 49. If a

plaintiff meets the burden with respect to these three elements, the burden shifts to the defendant manufacturer to prove that the product was not defective when it left its control. *Id.* In addition, "[t]he general Louisiana rule is that *res ipsa loquitur* applies only when the instrumentality causing the accident is within the control of the defendants." *Winans v. Rockwell Intern. Corp.*, 705 F.2d 1449, 1455 (5th. Cir. 1983) (citations omitted); *see also Love's Travel Stops & Country Stores, Inc. v. Singh*, No. CV 18-00842-BAJ-EWD, 2020 WL 6707550, at *3 (M.D. La. Nov. 13, 2020).

Here, the undisputed facts establish that hundreds of guests stayed in the hotel room containing the bench at issue between the time the bench left Dubois' control in January of 2019 and the date of the alleged incident in June of 2022. (Doc. 82 at 4). The undisputed facts also establish that the bench was in Crowne's control at the time of the alleged incident. (Doc. 72-2 ¶ 5; Doc. 76-1 ¶ 5; Doc. 82 at 4). Because the evidence does not exclude all other probable explanations for the alleged bench collapse, and because the bench was not in Dubois' exclusive control at the time of the collapse, Plaintiff has not satisfied the elements for *res ipsa loquitur* to apply, and the Court does not reach the burden-shifting step of the analysis. *See Singh*, 2020 WL 6707550, at *3 ("Here, because the evidence does not exclude all other probable explanations for the service station fire, and because the Freightliner was not in Daimler's exclusive control at the time of the fire, the Court does not reach the burden-shifting step of the analysis."); *Weams v. FCA US L.L.C.*, No. CV 17-4-RLB, 2019 WL 960159, at *19 (M.D. La. Feb. 27, 2019) ("Given [p]laintiff's lack of evidence

23

excluding other reasonable explanations for the inadvertent airbag deployment other than that the vehicle was defective when it left [d]efendant's control, the doctrine of *res ipsa loquitur* is inapplicable in this LPLA action."); *id.* ("The doctrine [of *res ipsa loquitur*] is inapplicable under the circumstances, particularly given the unknowns regarding the vehicle's maintenance history and previous owner(s) during tens of thousands of miles and years of use."); *see also Centauri Specialty Ins. Co. v. Gen. Motors, LLC*, No. 16-226, 2017 WL 1015311, at *4–5 (M.D. La. Mar. 15, 2017) (doctrine of *res ipsa loquitur* inapplicable where fire originated from engine compartment while vehicle was parked and not running, vehicle was purchased with 124 miles and owned for seven years before the incident, and the plaintiff failed to rule out reasonable explanations for the fire, such as third-party fault or some intervening cause); *Patton v. Bos. Sci. Corp.*, No. 15-1976, 2018 WL 4760846, at *4 (W.D. La. Oct. 2, 2018) (doctrine inapplicable where the plaintiffs offered "no evidence in support of their argument that *res ipsa loquitur* should be applied other than their contention" that the medical device failed in its "normal and intended use").

Because Plaintiff's only argument that the alleged defect existed at the time it left Dubois' control, as required to prove her construction or composition claim, is that the doctrine of *res ipsa loquitur* applies, Plaintiff's design defect claim against Dubois will be **DISMISSED WITH PREJUDICE**. Accordingly, Dubois' Motion (Doc. 72) is **GRANTED**.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Sanctions Due to Spoliation of Evidence (Doc. 74)** is **GRANTED IN PART** and **DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that Defendant Executive Affiliates, Inc. d/b/a Crowne Plaza Executive Cener, LLC's **Motion For Summary Judgment (Doc. 73)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Dubois Wood Products, Inc.'s **Motion For Summary Judgment (Doc. 72)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Dubois Wood Products, Inc. are **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 12th day of March, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**